**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| VINITA HAMBRICK-BROWN<br>Fredericksburg, Virginia<br><br>*Plaintiff,*<br><br>v.<br><br>INTERNATIONAL REFUGEE ASSISTANCE PROJECT,<br>1 Battery Park Plaza<br>Floor 4,<br>New York, NY 10004<br><br>and<br><br>SHARIF ALY, individually,<br>1 Battery Park Plz Apt<br>New York, New York 10005-1405<br><br>ROUBA ANKA, individually,<br>Address unknown<br><br>Serve (All Defendants upon agreement of counsel)<br>Christopher M. Helsel<br>Maxfield B. Daley-Watson<br>O'Hagan Meyer<br>225 West 34th Street<br>9th Floor<br>New York, New York 10122<br><br>*Defendant* | DEMAND FOR JURY TRIAL |

**<u>COMPLAINT FOR DAMAGES</u>**

COMES NOW, Plaintiff, Vinita Hambrick-Brown (hereinafter "Dr. Hambrick-Brown" or "Plaintiff") by and through counsel, Eric L. Siegel of Eric Siegel Law, PLLC, and hereby files this action against Defendant International Refugee Assistance Project (hereinafter "IRAP" or

"Defendant"), Sharif Aly (hereinafter "Mr. Aly"), and Rouba Anka (hereinafter "Ms. Anka") (collectively "Defendants") and for cause states:

## NATURE OF ACTION

1. Plaintiff, Vinita Hambrick-Brown, brings this action against Defendants for declaratory, injunctive, and equitable relief, as well as monetary damages, to redress Defendants' unlawful employment practices, including discriminatory disparate treatment and harassment of Plaintiff due to her race, denial/suspension of equal employment opportunities, creation of a hostile work environment, unlawful retaliation after she engaged in protected activity, and the aiding and abetting of unlawful discrimination and/or retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1981, the New York State Human Rights Law, and the New York City Human Rights Law.

2. This case arises from Defendants' discrimination and retaliation against Dr. Hambrick-Brown, a Black woman who has served as IRAP's Senior Human Resources Project Manager since June 9, 2025.

3. Throughout her employment, Dr. Hambrick-Brown was subjected to racially discriminatory and hostile treatment, including greater scrutiny in promotional opportunities, race-based and misogynistic targeting, bullying, and microaggressions.

4. Dr. Hambrick-Brown was a dedicated employee of IRAP.

5. Dr. Hambrick-Brown made good faith reports of race discrimination to the EEOC, of which IRAP was notified, and was regarded by IRAP leadership as a favorable witness to a former human resources supervisor's EEO dispute and providing counsel and support to her.

6. This case exemplifies the unique challenges faced by Black women in employment discrimination litigation.[1] Research demonstrates that Black women are typically less likely to be believed than Black men when making workplace discrimination accusations,[2] requiring courts to carefully examine the coded racism and unconscious biases that specifically target Black women in the workplace. *Harris v. Mayorkas*, 2023 U.S. Dist. LEXIS 131317, at *9-10, n. 3 (E.D. Va. July 17, 2023), *citing Lam v. University of Hawaii*, 40 F.3d 1551, 1562 (9th Cir. 1994) (holding that, because a person's identity "… cannot be neatly reduced to distinct components," "… the attempt to bisect a person's identity at the intersection of race and gender often distorts or ignores the particular nature of their experiences).

7. As courts have recognized, Black women are subject to unique stereotypes that neither Black men nor White women must endure. *Shazor v. Prof'l Transit Mgmt., Ltd.*, 744 F.3d 948, 958 (6th Cir. 2014); *Zaire v. Protective Training Acad., LLC*, 2019 U.S. Dist. LEXIS 90473, at 18-19 (D. Md. May 19, 2019); *Jeffers v. Thompson*, 264 F.Supp.2d 314, 326 (D. Md. 2003). The discriminatory treatment Dr. Hambrick-Brown experienced reflects workplace manifestations of historical stereotypes rooted in slavery-era laws that dehumanized Black people, creating lasting patterns of coded language and microaggressions that persist in modern employment settings.

8. Central to this case is the "angry black woman" stereotype, a harmful myth derived from the portrayal of Black women in cinema and on television, in which they are depicted as "tart-tongued and emasculating, one hand on a hip and the other pointing and jabbing (or arms

---

[1] Peggie R. Smith, *Separate Identities: Black Women, Work, and Title VII*, 14 Harv. Women's L.J. 21 (1991) (emphasizing the need to examine African American women's claims of "interactive" race-and-gender discrimination within a socio-historical framework); Kufere Laing, *Interpreting the People's Constitution*, 65 How. L.J. 533, 557-67 (2022) (setting out an interpretive framework for Title VII claims that considers the unique experiences of Black women and other intersectional plaintiffs).

[2] Black women are believed less than others regarding discrimination claims. looking at EEOC data from 2011 to 2016 for gender cases and 2010 to 2017 for race cases. Dr. Ashleigh Shelby Rosette found that Black women who were granted financial compensation after being discriminated against were awarded *less* money compared to White women for gender discrimination, but *more* money than Black men who endured racial discrimination.

akimbo), violently and rhythmically rocking her head .... She is a shrill nagger with irrational states of anger and indignation and is often mean-spirited and abusive ... [S]he has venom for anyone who insults or disrespects her."[3] The stereotype supports that, "… when Black women engage in assertive or forceful behavior, their conduct is tagged as threatening or deviant, even when it would be tolerated in an employee of a different gender or race."[4]

9. This discriminatory stereotype manifests in workplace practices that systematically disadvantage Black women: expecting them to work without adequate resources, subjecting them to harsher criticism while providing less praise, demanding they work harder than white peers, and creating circumstances where Black women are consistently expected to achieve more with less support.[5] These patterns, evident throughout Dr. Hambrick-Brown's employment, reflect institutionalized discrimination rather than individual performance issues.

10. The discriminatory evaluation of Black women's workplace behavior further demonstrates this systematic bias. When Black women are criticized for inappropriate "tone" or labeled as "pushy," "aggressive," or "not a team player," these descriptors carry coded racial

---

[3] Ferris State University, Jim Crow Museum of Racist Memorabilia (2012), https://www.ferris.edu/HTMLS/news/jimcrow/antiblack/sapphire.htm; *see also Heard v. Bd. of Trs. of the Jackson Cmty. Coll.*, 2013 U.S. Dist. LEXIS 4490, at *33 (E.D. Mich. Jan. 11, 2013) (describing "the Angry Black Woman" stereotype, which characterizes "black women as rude, loud, malicious, stubborn, and overbearing"); *Young v. Control Sols., LLC*, 2017 U.S. Dist. LEXIS 93681, at *12-13 (N.D. Ill. June 19, 2017) ("Angry and its synonyms are, standing alone, innocent words with no racial connotation. They are words, however, with a long history as part of a stereotypical depiction of black women that can trace its roots to the institution of slavery. . .. [T]here appears to be an academic consensus regarding both the resilience of this stereotype within American society and its continued detrimental impact upon black women. When a word or concept is so pervasively and enduringly linked to a derogatory stereotype, its use to reference individuals traditionally subject to the stereotype inherently raises the specter of motivation or bias.")

[4] Courts have found that invocation of the "Angry Black Woman" stereotype may serve as evidence of discriminatory animus. *See Curry v. Devereux Found.*, 541 F. Supp. 3d 555, 561 (E.D. Pa. 2021); *Robinson v. City of Atlanta*, 2017 U.S. Dist. LEXIS 207880, at *7 (N.D. Ga. Dec. 21, 2010) (holding that "angry black woman" comments support a claim for discriminatory discharge based on race and sex); *DeBose v. Univ. of S. Fla. Bd. of Trs.*, 2017 U.S. Dist. LEXIS 160841, at *7-8, 24-25 (M.D. Fla. Sep. 29, 2017); *Peeler v. Premier Ambulatory Surgical Ctr., LLC*, 2019 U.S. Dist. LEXIS 250391, at *6 (N.D. Ga. Mar. 29, 2019); *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 272 (2d Cir. 2023). While stereotypical comments fall short of constituting actionable harassment, they may serve as evidence that race motivated certain employment decisions. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989).

[5] *See* Examples in Left Out and Left Behind The Hurdles, Hassles, and Heartaches of Achieving Long-Term Legal Careers for Women of Color (2020).

meanings that echo the punishment mechanisms used against Black women during slavery. *Thomas v. Eotech, LLC*, 2014 U.S. Dist. LEXIS 233521, at *4 (D. Md. Dec. 27, 2024). Such racially-charged criticism triggers responses rooted in generational trauma and lifelong experiences of negative stereotyping, creating psychological harm that white women do not experience when receiving similar workplace feedback.

11. The concept of historical trauma, the cumulative emotional and psychological harm that transcends generations from substantial historical events such as slavery and Jim Crow laws, provides essential context for understanding the profound impact of workplace discrimination on Black women, and Dr. Hambrick-Brown in particular.[6] This internalized trauma amplifies the harm caused by discriminatory workplace practices, making the damages suffered by Dr. Hambrick-Brown both more severe and more complex than those experienced by employees who do not carry this historical burden.

12. Plaintiff hereby brings this action for relief based upon causes of action arising from violations of Title VII, Section 1981, the NYSHRL, and the NYCHRL.

**PARTIES**

13. Plaintiff Vinita Hambrick-Brown ("Dr. Hambrick-Brown" or "Plaintiff) is a Black woman who resides in Fredericksburg, Virginia. She is presently employed by IRAP as a Senior Human Resources Program Manager, a role which she has held since June 9, 2025. At all times relevant hereto, Plaintiff has been an employee in good standing at IRAP.

---

[6] Listening to Black Women and Girls: Lived Experiences of Adultification Bias, https://www.law.georgetown.edu/poverty-inequality-center/wp-content/uploads/sites/14/2019/05/ Listening-to-Black-Women-and-Girls.pdf (Accessed July 18, 2025); Mohatt NV, Thompson AB, Thai ND, Tebes JK. Historical trauma as public narrative: a conceptual review of how history impacts present-day health. Soc. Sci Med. 2014 Apr; 106: 128-36. Doi:10.1016/j.socscimed.2014.01.043. Epub 2014 Jan 31. PMID: 24561774; PMCID: PMC4001826. https://pmc.ncbi.nlm.nih.gov/articles/PMC4001826/pdf/nihms569976.pdf (retrieved July 18, 2025).

14. Defendant IRAP provides and facilitates free legal services for vulnerable populations around the world, including refugees, who escape persecution and find safety in the United States and other Western countries, with its principal place of business in New York, New York and its primary mailing address located at1 Battery Park Plaza, Floor 4, New York, NY 10004.

15. Defendant IRAP employs more than fifteen (15) individuals and is an "Employer" within the meaning of Title VII, Section 1981, the New York City Human Rights Law, and the New York State Human Rights Law.

16. Defendant Sharif Aly is an individual and, at all relevant times, served as IRAP's President. Mr. Aly exercised managerial, supervisory, and decision-making authority over Ms. Dennis, including authority and involvement concerning her compensation, retention, response to complaints, benefits-related matters, and termination. Mr. Aly is sued individually on claims for which individual liability is available, including claims that he personally participated in, aided and abetted, ratified, or failed to prevent discriminatory and retaliatory conduct after receiving notice of Plaintiff's protected complaints.

17. Defendant Rouba Anka is an individual and, at all relevant times, served in a senior executive and supervisory role at IRAP. Ms. Anka exercised managerial, supervisory, and decision-making authority over Ms. Dennis, including authority and involvement concerning her work assignments, retention compensation, benefits and payroll issues, exclusion from HR-related functions, internal communications, and termination. Ms. Anka is sued individually on claims for which individual liability is available, including claims that she personally participated in, aided and abetted, ratified, or failed to prevent discriminatory and retaliatory conduct after receiving notice of Plaintiff's protected complaints.

## JURISDICTION AND VENUE

18. Subject matter jurisdiction is proper in this Court because this Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States, specifically Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981.

19. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's claims under the New York State Human Rights Law and New York City Human Rights Law because such claims are so related to the federal claims as to form part of the same case or controversy.

20. Venue is proper under 28 U.S.C. § 1391(b) because Defendant IRAP operates its United States headquarters in this District at 1 Battery Park Plaza, Floor 4, New York, NY 10004, and a substantial part of the events giving rise to Plaintiff's claims occurred in New York, New York, including the decision to terminate her employment.

21. Defendants are subject to personal jurisdiction in this District because, at all relevant times, Defendants maintained minimum contacts and transacted business in New York, Defendant IRAP was an "employer" with respect to Plaintiff, and Defendants committed the acts and omissions alleged herein while acting within the scope of authority in this District.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

22. Prior to filing this Complaint against IRAP, Dr. Hambrick-Brown filed a Charge of Discrimination with the EEOC on May 22, 2026, which was assigned Charge No. 570-2026-02912 and cross-filed with the Virginia Council on Human Rights.

23. Dr. Hambrick-Brown received her Right to Sue letter on July 1, 2026.

24. Accordingly, she has exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407, which allows her to pursue relief under Title VII in this Court.

25. Dr. Hambrick-Brown is not required to exhaust administrative remedies as to her claims under the NYSHRL or the NYCHRL, N.Y. CLS Exec. § 297(9); N.Y.C. Admin. Code § 8-502(a) ; *see also Hernandez v. New York City Law Dep't Corp. Counsel*, 1997 U.S. Dist. LEXIS 620, at *29 (S.D.N.Y. Jan. 23, 1997), nor is she required to exhaust for purposes of her Section 1981 claim. *Villavicencio v. Gure-Perez*, 56 F. Supp. 3d 178, 184 (E.D.N.Y. 2014).

## FACTUAL ALLEGATIONS

26. Dr. Vinita Hambrick-Brown is a Black woman who works for IRAP as a Senior HR Project Manager.

27. She began employment with IRAP on June 9, 2025, and brought to the organization extensive leadership, operational, and Human Resources management experience, including 23 years as a disabled veteran of the United States Army.

28. Her professional background included leadership in structured, high-accountability environments requiring operational discipline, compliance oversight, personnel management, and complex organizational coordination.

29. Within days of starting at IRAP, Dr. Hambrick-Brown experienced conduct contributing to an exclusionary work environment when, during an all-staff introduction meeting on June 12, 2025, employees responded to her introduction with "thumbs down" emojis while other new hires received welcoming and supportive responses.

30. Shortly thereafter, Rouba Anka told Dr. Hambrick-Brown that HR did not have a good reputation within IRAP and that employees did not trust HR.

31. During Reduction-in-Force listening sessions in or around October and November 2025, Dr. Hambrick-Brown was informed that executive and senior leadership reportedly did not want HR meaningfully involved because of distrust of HR, and she was limited to serving only as a project manager rather than functioning in an appropriate HR leadership capacity despite her HR role and qualifications.

32. In December 2025, IRAP, via Defendant Aly, announced a temporary freeze on promotions and discretionary compensation adjustments pending financial and organizational review.

33. On or about December 16 or 17, 2025, Tracy Dennis, a Black female senior HR executive and Dr. Hambrick-Brown's supervisor, was terminated, and Dr. Hambrick-Brown was informed that Ms. Dennis had allegedly engaged in conduct benefitting herself and harming the organization.

34. Ms. Dennis was the fourth Black woman separated from HR leadership roles within the organization.

35. On December 18, 2025, Dr. Hambrick-Brown was questioned about whether she had communicated with Ms. Dennis, leadership referenced similarities between language in Dr. Hambrick-Brown's EEO complaint and matters involving Ms. Dennis, employees, including Dr. Hambrick-Brown, were told the matter had become "legal," and employees were instructed not to send screenshots or documents, which Dr. Hambrick-Brown reasonably perceived as intimidating and retaliatory because she was regarded as a witness in an EEO matter involving Ms. Dennis.

36. Dr. Hambrick-Brown also raised good-faith concerns that IRAP leadership was attempting to retroactively shift responsibility for benefits-related decisions onto Ms. Dennis after Ms. Dennis's termination. In her role as benefits coordinator, Dr. Hambrick-Brown reviewed

communications and plan materials suggesting that the benefits structure at issue had not been created unilaterally by Ms. Dennis, but had involved benefits consultants, ADP, and executive leadership review and approval. Dr. Hambrick-Brown understood that the benefits plans had been reviewed by executive leadership and signed off as approved after being presented by the consultant, and she questioned why Ms. Dennis was being penalized for decisions involving others.

37. Dr. Hambrick-Brown further reported that Rouba Anka and Heba Al-Risheq later relied on an earlier version of the plan that she believed was not the approved version, and that she disclosed this issue to Rebecca Heller and Sharif Aly because she was concerned that inaccurate facts were being used and that she could be wrongly implicated due to her benefits role.

38. Rather than investigate Dr. Hambrick-Brown's concerns neutrally, IRAP questioned her about her communications, warned employees not to send screenshots or documents because the matter had become "legal," and thereafter treated her as a problem to be isolated rather than as an HR professional attempting to ensure accuracy and compliance.

**Dr. Hambrick-Brown Is Denied Pay For Additional Job Responsibilities Compared To Other White Employees**

39. After Ms. Dennis's termination, Dr. Hambrick-Brown assumed substantial additional responsibilities, including departmental budget work, HRIS implementation functions, benefits administration, and operational HR leadership duties, but IRAP did not provide any promotion, salary increase, title adjustment, or additional staffing support. Those expanded duties included HR operational leadership functions, departmental budget responsibilities, benefits administration, HRIS implementation work, and strategic HR operational support, yet she received no promotion, no salary increase, no title adjustment, and no additional staffing support.

40. In January 2026, IRAP initiated a search for a Head of People & Culture / Head of HR role through an external consulting and recruiting firm, and Dr. Hambrick-Brown expressed interest in the position with the consulting firm on January 27, 2026, and met with the consulting firm on March 11, 2026.

41. In April 2026, IRAP told Dr. Hambrick-Brown that she would not be selected because leadership allegedly wanted a more "global" direction for the position, even though she possessed global HR experience and had already been performing many senior HR operational functions for quite some time.

42. IRAP never told her that she lacked qualifications for the role. Mr. Aly and Ms. Ranka were the decisionmakers for the role.

43. During the same period, despite the announced promotion and compensation freeze, IRAP continued approving promotions, title changes, salary adjustments, onboarding activity, and leadership appointments. These actions raised concerns that IRAP selectively enforced alleged financial restrictions while continuing to elevate and compensate others outside similarly situated Black female HR personnel.

44. In or around March 2026, Dr. Hambrick-Brown requested compensation for the additional work she was performing and learned that another employee received a $10,000 bonus for absorbing extra work. Yet, she had absorbed additional work and was told IRAP was under a "freeze" and conducting a budget analysis.

45. IRAP also increasingly directed strategic HR systems work outside the HR structure and coordinated it through the Strategic Operations Department personnel rather than through Dr. Hambrick-Brown's HR leadership role, despite her operational responsibilities and experience, diminishing her professional visibility, advancement opportunities, and authority. For

example, Dr. Hambrick-Brown reported that a project involving a new HRIS system, which she believed would have fallen within HR, was given to Victoria Linn, who was not an HR project manager.

**Dr. Hambrick-Brown Files An EEOC Charge – Protected Activity – And Is Retaliated Against For Doing So**

46. After enduring racially disparate treatment for many months, Dr. Hambrick-Brown filed an EEOC charge on May 22, 2026 – EEO protected activity. IRAP was soon notified of that charge thereafter.

47. By late August 2026, IRAP had paid over $40,000 in bonus compensation to employees for increased workloads, while Heba Al-Risheq had been promoted into a position that would make her Dr. Hambrick-Brown's direct supervisor effective September 1, 2026.

48. Dr. Hambrick-Brown reported that Ms. Al-Risheq had substantially less professional experience and formal education than she did, had no prior supervisory experience to Dr. Hambrick-Brown's knowledge, resided outside the United States, and had considerably less experience with U.S. employment law, HR compliance, and governance. Dr. Hambrick-Brown further reported that this position was not posted or advertised contrary to IRAP written policies, that Tracy Dennis had previously discussed creating that level of position as an advancement opportunity for Dr. Hambrick-Brown, and that the normal internal hiring process did not appear to have been followed.

49. On or about August 21, 2026, Dr. Hambrick-Brown sent an email to Ms. Anka and copied Mr. Aly, requesting clarification regarding duties, responsibilities and concerns in HR Operations. Neither responded or acknowledged the concern. However, on August 27, 2026, IRAP announced that, effective September 1, 2026, Heba Al-Risheq would become Global Human Resources Director, would lead the Global HR team, and that the U.S. HR team members,

including Dr. Hambrick-Brown, would report directly to Ms. Al-Risheq. Dr. Hambrick-Brown contemporaneously reported that the role had been announced that day and had never been advertised as an opportunity, asserting it as discriminatory.

50. On or about September 2, 2026, IRAP announced title changes taking effect September 1 for FY27, including interim role updates that reflected staff stepping "above and beyond" into interim roles without salary changes. Those updates included Kate List as Interim Head of Global Programs, Amirah Hammad as Interim Operations Director for Jordan, Jillian Morgan as Interim Programs Director for Jordan, Hannah Flamm as Immigration Solutions Accelerator Director, Phil List as Director of Technology, and Victoria Lin as Global Operations Senior Manager.

51. Also, to her surprise, after she contacted IRAP through her legal counsel in an effort to resolve her civil rights claims against IRAP – more EEO protected activity -- IRAP initiated a formal investigation against Dr. Hambrick-Brown in connection with matters relating to Tracy Dennis's ADP SUI claim

52. Dr. Hambrick-Brown reported to IRAP management that she had never accessed or taken action on Ms. Dennis's file; never initiated or performed any transaction relating to Ms. Dennis's separation; and an independent ADP audit identified who actually performed the termination transaction. The ADP system record identifies Heba Al Risheq as the person who completed the "When & Why," "Team Reassignment," and "Benefits" steps for Tracy Dennis's termination on December 17, 2025.

53. Dr. Hambrick-Brown further reported to IRAP representatives that she had been removed as a collaborator from the ADP case and no longer had visibility into subsequent communications, responses, findings, or resolution.

54. Dr. Hambrick-Brown also has reported that Kate List had been identified as the investigator for a new formal complaint; that Kate List is married to Phil List, IRAP's IT Director; and that Dr. Hambrick-Brown raised the relationship because of potential concerns about independence, confidentiality, and access to IRAP's IT systems, communications, and email infrastructure. By September 2, 2026, Dr. Hambrick-Brown reported that she did not plan to meet with the investigator until after returning from sick leave because she had a pinched nerve in her back and was taking the rest of the week off.

55. Dr. Hambrick-Brown has also experienced increased exclusion and isolation, including exclusion from meetings, lack of response from Rouba Anka, and being left to work each day until work presented itself.

56. After IRAP was notified of her EEOC charge in May 2026, Dr. Hambrick-Brown's job responsibilities and system access were removed, responsibilities were shifted to other team members, her access to her supervisor had largely disappeared, and the situation caused medical concerns requiring support through the Department of Veterans Affairs ("VA") because of the retaliatory hostile work environment and anxiety at work.

**FIRST CAUSE OF ACTION**
**Race Discrimination in Violation of Title VII of the Civil Rights Act of 1964**
**42 USCS § 2000e et seq.**

57. Plaintiff realleges and reincorporates by reference the previous paragraphs as if fully set forth herein.

58. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, prohibits employers from discriminating against employees because of their race, including in hiring, promotion, compensation, terms, conditions, and privileges of employment. 42 U.S.C.S. § 2000e-2(a).

59. At all times relevant to this action, IRAP was Dr. Hambrick-Brown's employer within the meaning of Title VII, employing more than fifteen (15) individuals and engaging in an industry affecting commerce.

60. Dr. Hambrick-Brown is a member of a protected class under Title VII as a Black woman.

61. Plaintiff was qualified for her position and for advancement into higher-level Human Resources leadership roles at IRAP, including the Head of People & Culture, Head of HR, Global Human Resources Director, or comparable HR leadership position.

62. Plaintiff had extensive Human Resources, leadership, operations, compliance, and organizational management experience, including significant prior leadership experience and more than two decades of military service.

63. After the departure of IRAP's prior HR executive, Plaintiff assumed substantial additional HR leadership responsibilities, including operational HR leadership functions, departmental budget responsibilities, benefits administration, HRIS implementation work, strategic HR operational support, and other duties consistent with higher-level HR leadership.

64. Despite Plaintiff's qualifications and performance of expanded higher-level duties, Defendant failed and refused to promote Plaintiff, increase her compensation, adjust her title, or provide her with corresponding leadership authority.

65. Plaintiff expressed interest in and sought advancement into IRAP's HR leadership role, including the Head of People & Culture, Head of HR, Global Human Resources Director, or comparable position.

66. Defendant denied Plaintiff that advancement opportunity.

67. Defendant selected or advanced another individual, Ms. Al-Risheq, into an HR leadership position over Plaintiff.

68. Plaintiff was qualified for the promotion and was at least as qualified as, or more qualified than, the individual selected, including with respect to U.S. employment law, HR compliance, governance, leadership, and operational HR responsibilities.

69. Senior leadership, including Mr. Aly, has previously admitted that Black women were treated more harshly than white employees yet failed to act in mitigating the hostile environment.

70. Defendant's failure to promote Plaintiff occurred under circumstances giving rise to an inference of discrimination based on race.

71. Those circumstances include, but are not limited to, Defendant's inconsistent application of its promotion, compensation, and internal hiring policies; Defendant's continued approval of promotions, title changes, salary adjustments, bonuses, leadership appointments, and interim roles for other white employees while denying Plaintiff advancement; Defendant's failure to follow its normal internal hiring or posting procedures; Defendant's shifting or unsupported explanation that leadership desired a more "global" direction despite Plaintiff's global HR experience; and Defendant's pattern of excluding Plaintiff from HR leadership authority while requiring her to perform higher-level HR work.

72. Defendant treated Plaintiff less favorably than similarly situated employees outside her protected classes and/or otherwise treated Plaintiff less favorably because of her race

73. Defendant's stated reasons for failing to promote Plaintiff were, and are, false, inconsistent, unsupported, and pretextual.

74. IRAP's discriminatory conduct is intentional and creates disparate treatment based on Dr. Hambrick-Brown's race, as evidenced by the differential treatment she received compared to similarly situated white employees.

75. IRAP's proffered reasons for its adverse employment actions against Dr. Hambrick-Brown, including but not limited to its failure to promote her, are pretextual and were motivated by racial discrimination.

76. As a direct and proximate result of IRAP's unlawful race discrimination in violation of Title VII, Dr. Hambrick-Brown has suffered and continues to suffer monetary and economic damages, including but not limited to loss of past and future income, compensation, and benefits.

77. As a direct and proximate result of IRAP's unlawful race discrimination, Dr. Hambrick-Brown has suffered and continues to suffer damages for loss of future earning capacity, damage to her professional reputation, and severe mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, issues with sleep, and emotional pain and suffering.

78. IRAP explicitly tolerated a culture of racially-charged commentary and harassment and ratified such conduct by awarding promotions and career-advancing opportunities to those engaged in such harassment. As such, IRAP's unlawful discriminatory conduct was willful, wanton, and malicious, and was done with conscious disregard of Dr. Hambrick-Brown's civil rights, entitling her to an award of punitive damages.

79. Dr. Hambrick-Brown also seeks reimbursement of attorneys' fees, interest, and costs associated with pursuing this civil action.

80. Dr. Hambrick-Brown seeks injunctive relief to prevent IRAP from engaging in future race-based discrimination and disparate treatment against minority employees. Such

injunctive relief should include, but not be limited to, requiring IRAP to implement and maintain non-discriminatory hiring, promotion, compensation, and termination policies, providing mandatory training on federal civil rights laws and unconscious bias for all supervisory personnel, establishing clear procedures for reporting and investigating discrimination complaints, and ensuring equal treatment of all employees regardless of race in work assignments, advancement opportunities, and workplace accommodations. This injunctive relief is necessary to prevent the continuation of the systematic discriminatory practices that Dr. Hambrick-Brown has endured and to ensure compliance with federal civil rights laws.

## SECOND CAUSE OF ACTION
**Retaliation in Violation of Title VII of the Civil Rights Act of 1964**
**42 USCS § 2000e *et seq*.**

81. Plaintiff realleges and reincorporates by reference the previous paragraphs as if fully set forth herein.

82. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, prohibits employers from retaliating against employees who oppose discriminatory practices or participate in investigations, proceedings, or hearings under Title VII.

83. Plaintiff engaged in protected activity when she opposed discrimination and inequitable treatment at IRAP, including IRAP's failure to promote her, failure to compensate her for expanded HR leadership duties, exclusion from leadership functions, inconsistent application of promotion and compensation policies, stripping of her job responsibilities and disparate treatment of Black women in HR leadership.

84. Plaintiff also engaged in protected activity when she raised good-faith concerns that IRAP was attempting to retroactively shift blame for benefits-related decisions onto Ms. Tracy Dennis, a Black female HR executive who had been terminated by IRAP. Plaintiff reasonably believed the disputed benefits structure involved consultants, ADP, and executive leadership

review or approval, and that Rouba Anka and Heba Al-Risheq later relied on an earlier plan version that Plaintiff believed was not the approved version. Plaintiff disclosed these concerns to senior leadership, including Rebecca Heller and Sharif Aly.

85. Plaintiff further engaged in protected activity when she filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission alleging discrimination, retaliation, disparate treatment, hostile work environment, and discriminatory denial of advancement opportunities. Defendant knew of Plaintiff's protected activity.

86. After Plaintiff engaged in protected activity, Defendant subjected her to materially adverse actions, including questioning her communications with Ms. Dennis, warning employees, including Plaintiff, not to send screenshots or documents because the matter was "legal," increasing scrutiny of Plaintiff, isolating her from leadership and HR functions, excluding her from meetings, reducing or reassigning her duties, diminishing her access to systems and information, denying her promotion and compensation, placing another less-qualified individual above her in HR leadership, and initiating or permitting a formal investigation of Plaintiff.

87. Defendant's actions would dissuade a reasonable employee from making or supporting a charge of discrimination, opposing discrimination, disclosing compliance concerns, or participating in protected activity.

88. The timing and circumstances of Defendant's actions support a causal connection between Plaintiff's protected activity and Defendant's retaliation. Defendant's explanations are inconsistent and pretextual, including its reliance on alleged promotion and compensation restrictions while continuing to approve promotions, title changes, leadership appointments, and compensation opportunities for others, and its claim that Plaintiff was not selected for HR

leadership because IRAP wanted a more "global" direction despite Plaintiff's global HR experience and performance of senior HR duties.

89. Defendant retaliated against Plaintiff because she opposed discrimination, disclosed concerns regarding the benefits-plan issue involving Ms. Dennis, filed an EEOC Charge of Discrimination, in violation of Title VII and was regarded as a witness supporting Ms. Dennis's EEO dispute against IRAP.

90. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered damages, including lost wages, lost benefits, lost promotional opportunities, loss of professional standing, emotional distress, humiliation, reputational harm, and other compensatory damages.

91. Defendant has acted intentionally, willfully, maliciously, recklessly, and/or with reckless indifference to Plaintiff's federally protected rights.

92. Dr. Hambrick-Brown also seeks reimbursement of attorneys' fees, interest, and costs associated with pursuing this civil action.

93. Dr. Hambrick-Brown also seeks injunctive relief to prevent IRAP from engaging in future race-based retaliation against employees who oppose discrimination or participate in civil rights investigations, including but not limited to implementing policies and procedures to ensure equal treatment of employees regardless of race and prohibiting retaliation against employees who report discrimination.

## THIRD CAUSE OF ACTION
**Race Discrimination in Violation of 42 U.S.C. § 1981**
**(Against All Defendants)**

94. Plaintiff realleges and reincorporates by reference the previous paragraphs as if fully set forth herein.

95. This claim arises under 42 U.S.C. § 1981, which protects the rights of all individuals to be free from race-based discrimination in contractual relationships. It also applies to an employment relationship, including that which existed between Plaintiff and Defendant IRAP at all relevant times.

96. Dr. Hambrick-Brown is a member of a protected class under 42 U.S.C. § 1981 as an Black woman.

97. Throughout her employment with IRAP, Dr. Hambrick-Brown carried out her duties, responsibilities, and tasks as Senior Vice President of Human Resources with professionalism and competence.

98. 42 U.S.C. § 1981 also authorizes individual liability against those individuals who retain some affirmative link to causally connect them to the discriminatory action. *Patterson v. County of Oneida*, 375 F. 3d 206, 229 (2nd Cir. 2004).

99. Defendants' discriminatory conduct impaired Dr. Hambrick-Brown's ability to make and enforce contracts on the same terms as White employees, in violation of Section 1981.

100. Plaintiff was qualified for her position and for advancement into higher-level Human Resources leadership roles at IRAP, including the Head of People & Culture, Head of HR, Global Human Resources Director, or comparable HR leadership position.

101. Plaintiff had extensive Human Resources, leadership, operations, compliance, and organizational management experience, including significant prior leadership experience and more than two decades of military service.

102. After the departure of IRAP's prior HR executive, Plaintiff assumed substantial additional HR leadership responsibilities, including operational HR leadership functions,

departmental budget responsibilities, benefits administration, HRIS implementation work, strategic HR operational support, and other duties consistent with higher-level HR leadership.

103. Despite Plaintiff's qualifications and performance of expanded higher-level duties, Defendants failed and refused to promote Plaintiff, increase her compensation, adjust her title, or provide her with corresponding leadership authority.

104. Plaintiff expressed interest in and sought advancement into IRAP's HR leadership role, including the Head of People & Culture, Head of HR, Global Human Resources Director, or comparable position.

105. Defendants denied Plaintiff that advancement opportunity.

106. Defendants selected or advanced another individual, Ms. Al-Risheq, into an HR leadership position over Plaintiff.

107. Plaintiff was qualified for the promotion and was at least as qualified as, or more qualified than, the individual selected, including with respect to U.S. employment law, HR compliance, governance, leadership, and operational HR responsibilities.

108. Senior leadership, including Defendant Aly, has previously admitted that Black women were treated more harshly than white employees yet failed to act in mitigating the hostile environment.

109. Defendants' failure to promote Plaintiff occurred under circumstances giving rise to an inference of discrimination based on race.

110. Those circumstances include, but are not limited to, Defendants' inconsistent application of its promotion, compensation, and internal hiring policies; Defendants' continued approval of promotions, title changes, salary adjustments, bonuses, leadership appointments, and interim roles for other white employees while denying Plaintiff advancement; Defendants' failure

to follow its normal internal hiring or posting procedures; Defendants' shifting or unsupported explanation that leadership desired a more "global" direction despite Plaintiff's global HR experience; and Defendants' pattern of excluding Plaintiff from HR leadership authority while requiring her to perform higher-level HR work.

111. Defendants treated Plaintiff less favorably than similarly situated employees outside her protected classes and/or otherwise treated Plaintiff less favorably because of her race

112. Defendants' stated reasons for failing to promote Plaintiff were, and are, false, inconsistent, unsupported, and pretextual.

113. Defendants' discriminatory conduct is intentional and creates disparate treatment based on Dr. Hambrick-Brown's race, as evidenced by the differential treatment she received compared to similarly situated white employees.

114. As a direct and proximate result of Defendants' unlawful race discrimination in violation of 42 U.S.C. § 1981, Dr. Hambrick-Brown has suffered and continues to suffer monetary and economic damages, including but not limited to loss of future income, compensation, and benefits.

115. As a direct and proximate result of Defendants' unlawful discriminatory conduct and violation of 42 U.S.C. § 1981, Plaintiff has suffered and continues to suffer damages for loss of future earning capacity, damage to her professional reputation, and severe mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, sleep issues, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

116. Defendants explicitly tolerated a culture of discriminatory conduct by awarding promotions and career-advancing opportunities to those engaged in and who did not challenge the

discrimination at IRAP, as well as by tolerating the racially-charged hostile environment. As such, Defendants' unlawful discriminatory conduct was willful, wanton, and malicious, as well as demonstrated reckless indifference to Dr. Hambrick-Brown's civil rights, entitling her to an award of punitive damages.

117. Moreover, Defendants Mr. Aly and Ms. Anka acted with reckless indifference to Plaintiff's protected rights. They knew Plaintiff had raised race-based concerns about disparate treatment, microaggressions, public disrespect, exclusion, and hostile treatment as a Black woman in leadership, yet failed to investigate or take corrective action. Instead, they allowed the conduct to continue. Those facts support punitive damages against Mr. Aly and Ms. Anka as well for knowingly using their authority to assist and/or ratify discriminatory conduct despite clear notice that Plaintiff was asserting race-based workplace concerns. Their conduct was willful, wanton, and malicious, and was done with conscious disregard of Dr. Hambrick-Brown's civil rights, entitling her to an award of punitive damages against them, jointly and severally.

118. Dr. Hambrick-Brown also seeks reimbursement of attorneys' fees, interest, and costs associated with pursuing this civil action.

119. Dr. Hambrick-Brown seeks injunctive relief to prevent IRAP from engaging in future race-based discrimination and disparate treatment against minority employees. Such injunctive relief should include, but not be limited to, requiring IRAP to implement and maintain non-discriminatory hiring, promotion, compensation, and termination policies; providing mandatory training on federal civil rights laws and unconscious bias for all supervisory personnel; establishing clear procedures for reporting and investigating discrimination complaints; and ensuring equal treatment of all employees regardless of race in work assignments, advancement opportunities, and workplace accommodations. This injunctive relief is necessary to prevent the

continuation of the systematic discriminatory practices that Dr. Hambrick-Brown has endured at IRAP and to ensure compliance with federal civil rights laws.

**FOURTH CAUSE OF ACTION**
**Retaliation in Violation of 42 U.S.C. § 1981**
**(Against All Defendants)**

120. Plaintiff realleges and reincorporates by reference the previous paragraphs as if fully set forth herein.

121. 42 U.S.C. § 1981 prohibits retaliation against individuals who oppose race discrimination or assert their rights under the statute.

122. 42 U.S.C. § 1981 also authorizes individual liability against those individuals who retain some affirmative link to causally connect them to the discriminatory and/or retaliatory action. *Patterson v. County of Oneida*, 375 F. 3d 206, 229 (2nd Cir. 2004).

123. Plaintiff engaged in protected activity when she opposed discrimination and inequitable treatment at IRAP, including IRAP's failure to promote her, failure to compensate her for expanded HR leadership duties, exclusion from leadership functions, inconsistent application of promotion and compensation policies, stripping of her job responsibilities and disparate treatment of Black women in HR leadership.

124. Plaintiff also engaged in protected activity when she raised good-faith concerns that IRAP was attempting to retroactively shift blame for benefits-related decisions onto Ms. Tracy Dennis, a Black female HR executive who had been terminated by IRAP. Plaintiff reasonably believed the disputed benefits structure involved consultants, ADP, and executive leadership review or approval, and that Rouba Anka and Heba Al-Risheq later relied on an earlier plan version

that Plaintiff believed was not the approved version. Plaintiff disclosed these concerns to senior leadership, including Rebecca Heller and Sharif Aly.

125. Plaintiff further engaged in protected activity when she filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission alleging discrimination, retaliation, disparate treatment, hostile work environment, and discriminatory denial of advancement opportunities. Defendant knew of Plaintiff's protected activity.

126. After Plaintiff engaged in protected activity, Defendant subjected her to materially adverse actions, including questioning her communications with Ms. Dennis, warning employees, including Plaintiff, not to send screenshots or documents because the matter was "legal," increasing scrutiny of Plaintiff, isolating her from leadership and HR functions, excluding her from meetings, reducing or reassigning her duties, diminishing her access to systems and information, denying her promotion and compensation, placing another less-qualified individual above her in HR leadership, and initiating or permitting a formal investigation of Plaintiff.

127. Defendants' actions would dissuade a reasonable employee from making or supporting a charge of discrimination, opposing discrimination, disclosing compliance concerns, or participating in protected activity.

128. The timing and circumstances of Defendants' actions support a causal connection between Plaintiff's protected activity and Defendants' retaliation. Defendants' explanations are inconsistent and pretextual, including its reliance on alleged promotion and compensation restrictions while continuing to approve promotions, title changes, leadership appointments, and compensation opportunities for others, and its claim that Plaintiff was not selected for HR leadership because IRAP wanted a more "global" direction despite Plaintiff's global HR experience and performance of senior HR duties.

129. Defendants retaliated against Plaintiff because she opposed discrimination, disclosed concerns regarding the benefits-plan issue involving Ms. Dennis, filed an EEOC Charge of Discrimination, in violation of Title VII and was regarded as a witness supporting Ms. Dennis's EEO dispute against IRAP.

130. As a direct and proximate result of Defendants' unlawful retaliation in violation of 42 U.S.C. § 1981, Dr. Hambrick-Brown has suffered and continues to suffer monetary and economic damages, including but not limited to loss of past and future income, compensation, and benefits

131. As a direct and proximate result of Defendants' unlawful retaliation in violation of 42 U.S.C. § 1981, Dr. Hambrick-Brown has suffered and continues to suffer damages for loss of future earning capacity, damage to her professional reputation, and severe mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, sleep issues, and emotional pain and suffering.

132. Defendants' unlawful retaliatory conduct was willful, wanton, and malicious because they knowingly subjected Dr. Hambrick-Brown to discriminatory and retaliatory treatment despite her repeated complaints, disregarded her protected rights, and ultimately terminated her "for cause" based on reasons that were unsupported by the actual circumstances and pretextual, entitling her to an award of punitive damages.

133. Moreover, Defendants Mr. Aly and Ms. Anka acted with reckless indifference to Plaintiff's protected rights. They knew Plaintiff had raised race-based concerns about disparate treatment, microaggressions, public disrespect, exclusion, and hostile treatment as a Black woman in leadership, yet failed to investigate or take corrective action. Instead, they allowed the conduct to continue. Those facts support punitive damages because Mr. Aly and Ms. Anka, jointly or

severally, for knowingly using their authority to assist and ratify discriminatory and/or retaliatory conduct despite clear notice that Plaintiff was asserting race-based workplace concerns. Their conduct was willful, wanton, and malicious, and was done with conscious disregard of Dr. Hambrick-Brown's civil rights, entitling her to an award of punitive damages.

134. Dr. Hambrick-Brown also seeks reimbursement of attorneys' fees, interest, and costs associated with pursuing this civil action.

135. Dr. Hambrick-Brown also seeks injunctive relief to prevent Defendants from engaging in future race-based retaliation against employees who oppose discrimination or participate in civil rights investigations, including but not limited to implementing policies and procedures to ensure equal treatment of employees regardless of race and prohibiting retaliation against employees who report discrimination.

**FIFTH CAUSE OF ACTION**
**Discrimination in Violation of the New York State Human Rights Law**
**(N.Y. CLS Exec. §§ 290, *et seq.*)**
**(Against Defendant IRAP)**

136. Plaintiff realleges and reincorporates by reference the previous paragraphs as if fully set forth herein.

137. The New York State Human Rights Law ("NYSHRL") guarantees "equal opportunity to enjoy a full and productive life" whereby "every individual shall have an equal opportunity to participate fully in the economic, cultural and intellectual life of the state" as the state works towards "eliminat[ing] and prevent[ing] discrimination in employment… and to take other actions against discrimination[.]" N.Y. CLS Exec. § 290(3).

138. The NYSHRL also states: "It shall be an unlawful discriminatory practice…for an employer …, because of an individual's … race, … color, national origin, … to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such

individual in compensation or in terms, conditions or privileges of employment." N.Y. CLS Exec. § 296(1)(a).

139. Dr. Hambrick-Brown is a member of a protected class under the NYSHRL as a Black woman.

140. Plaintiff was qualified for her position and for advancement into higher-level Human Resources leadership roles at IRAP, including the Head of People & Culture, Head of HR, Global Human Resources Director, or comparable HR leadership position.

141. Plaintiff had extensive Human Resources, leadership, operations, compliance, and organizational management experience, including significant prior leadership experience and more than two decades of military service.

142. After the departure of IRAP's prior HR executive, Plaintiff assumed substantial additional HR leadership responsibilities, including operational HR leadership functions, departmental budget responsibilities, benefits administration, HRIS implementation work, strategic HR operational support, and other duties consistent with higher-level HR leadership.

143. Despite Plaintiff's qualifications and performance of expanded higher-level duties, Defendants failed and refused to promote Plaintiff, increase her compensation, adjust her title, or provide her with corresponding leadership authority.

144. Plaintiff expressed interest in and sought advancement into IRAP's HR leadership role, including the Head of People & Culture, Head of HR, Global Human Resources Director, or comparable position.

145. Defendants denied Plaintiff that advancement opportunity.

146. Defendants selected or advanced another individual, Ms. Al-Risheq, into an HR leadership position over Plaintiff.

147. Plaintiff was qualified for the promotion and was at least as qualified as, or more qualified than, the individual selected, including with respect to U.S. employment law, HR compliance, governance, leadership, and operational HR responsibilities.

148. Senior leadership, including Defendant Aly, has previously admitted that Black women were treated more harshly than white employees yet failed to act in mitigating the hostile environment.

149. Defendants' failure to promote Plaintiff occurred under circumstances giving rise to an inference of discrimination based on race.

150. Those circumstances include, but are not limited to, Defendants' inconsistent application of its promotion, compensation, and internal hiring policies; Defendants' continued approval of promotions, title changes, salary adjustments, bonuses, leadership appointments, and interim roles for other white employees while denying Plaintiff advancement; Defendants' failure to follow its normal internal hiring or posting procedures; Defendants' shifting or unsupported explanation that leadership desired a more "global" direction despite Plaintiff's global HR experience; and Defendants' pattern of excluding Plaintiff from HR leadership authority while requiring her to perform higher-level HR work.

151. Defendants treated Plaintiff less favorably than similarly situated employees outside her protected classes and/or otherwise treated Plaintiff less favorably because of her race

152. Defendants' stated reasons for failing to promote Plaintiff were, and are, false, inconsistent, unsupported, and pretextual.

153. Defendants' discriminatory conduct is intentional and creates disparate treatment based on Dr. Hambrick-Brown's race, as evidenced by the differential treatment she received compared to similarly situated white employees.

154. As a direct and proximate result of IRAP's unlawful race discrimination in violation of the NYCHRL, Dr. Hambrick-Brown has suffered and continues to suffer monetary and economic damages, including but not limited to loss of past and future income, compensation, and benefits.

155. As a direct and proximate result of IRAP's unlawful race discrimination, Dr. Hambrick-Brown has suffered and continues to suffer damages for loss of future earning capacity, damage to her professional reputation, and severe mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, sleep issues, and emotional pain and suffering.

156. IRAP explicitly tolerated a culture of racially-charged commentary and harassment and ratified such conduct by awarding promotions and career-advancing opportunities to those engaged in such harassment. As such, IRAP's unlawful discriminatory conduct was willful, wanton, and malicious, and was done with conscious disregard of Dr. Hambrick-Brown's civil rights, entitling her to an award of punitive damages.

157. Dr. Hambrick-Brown also seeks reimbursement of attorneys' fees, interest, and costs associated with pursuing this civil action.

158. Dr. Hambrick-Brown seeks injunctive relief to prevent IRAP from engaging in future race-based discrimination and disparate treatment against minority employees. Such injunctive relief should include, but not be limited to, requiring IRAP to implement and maintain non-discriminatory hiring, promotion, compensation, and termination policies; providing mandatory training on federal civil rights laws and unconscious bias for all supervisory personnel; establishing clear procedures for reporting and investigating discrimination complaints; and ensuring equal treatment of all employees regardless of race in work assignments, advancement

opportunities, and workplace accommodations. This injunctive relief is necessary to prevent the continuation of the systematic discriminatory practices that Dr. Hambrick-Brown has endured and to ensure compliance with federal civil rights laws.

**SIXTH CAUSE OF ACTION**
**Retaliation in Violation of the New York State Human Rights Law**
**(N.Y. CLS Exec. §§ 290, *et seq.*)**
**(Against Defendant IRAP)**

159. Plaintiff realleges and reincorporates the previous paragraphs as if fully set forth herein.

160. The NYSHRL states: "It shall be an unlawful discriminatory practice…[f]or any employer … to discharge, expel or otherwise discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article." N.Y. CLS Exec. § 296(1)(e).

161. Plaintiff engaged in protected activity when she opposed discrimination and inequitable treatment at IRAP, including IRAP's failure to promote her, failure to compensate her for expanded HR leadership duties, exclusion from leadership functions, inconsistent application of promotion and compensation policies, stripping of her job responsibilities and disparate treatment of Black women in HR leadership.

162. Plaintiff also engaged in protected activity when she raised good-faith concerns that IRAP was attempting to retroactively shift blame for benefits-related decisions onto Ms. Tracy Dennis, a Black female HR executive who had been terminated by IRAP. Plaintiff reasonably believed the disputed benefits structure involved consultants, ADP, and executive leadership review or approval, and that Rouba Anka and Heba Al-Risheq later relied on an earlier plan version that Plaintiff believed was not the approved version. Plaintiff disclosed these concerns to senior leadership, including Rebecca Heller and Sharif Aly.

163. Plaintiff further engaged in protected activity when she filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission alleging discrimination, retaliation, disparate treatment, hostile work environment, and discriminatory denial of advancement opportunities. Defendant knew of Plaintiff's protected activity.

164. After Plaintiff engaged in protected activity, Defendant subjected her to materially adverse actions, including questioning her communications with Ms. Dennis, warning employees, including Plaintiff, not to send screenshots or documents because the matter was "legal," increasing scrutiny of Plaintiff, isolating her from leadership and HR functions, excluding her from meetings, reducing or reassigning her duties, diminishing her access to systems and information, denying her promotion and compensation, placing another less-qualified individual above her in HR leadership, and initiating or permitting a formal investigation of Plaintiff.

165. Defendant's actions would dissuade a reasonable employee from making or supporting a charge of discrimination, opposing discrimination, disclosing compliance concerns, or participating in protected activity.

166. The timing and circumstances of Defendant's actions support a causal connection between Plaintiff's protected activity and Defendant's retaliation. Defendant's explanations are inconsistent and pretextual, including its reliance on alleged promotion and compensation restrictions while continuing to approve promotions, title changes, leadership appointments, and compensation opportunities for others, and its claim that Plaintiff was not selected for HR leadership because IRAP wanted a more "global" direction despite Plaintiff's global HR experience and performance of senior HR duties.

167. Defendant retaliated against Plaintiff because she opposed discrimination, disclosed concerns regarding the benefits-plan issue involving Ms. Dennis, filed an EEOC Charge

of Discrimination, in violation of Title VII and was regarded as a witness supporting Ms. Dennis's EEO dispute against IRAP.

168. As a direct and proximate result of IRAP's unlawful retaliation, Dr. Hambrick-Brown has suffered and continues to suffer monetary and economic damages, including but not limited to loss of past and future income, compensation, and benefits

169. As a direct and proximate result of IRAP's unlawful retaliation, Dr. Hambrick-Brown has suffered and continues to suffer damages for loss of future earning capacity, damage to her professional reputation, and severe mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, sleep issues, and emotional pain and suffering.

170. IRAP‘s unlawful retaliatory conduct was willful, wanton, and malicious because it knowingly subjected Dr. Hambrick-Brown to discriminatory and retaliatory treatment despite her repeated complaints, disregarded her protected rights, and ultimately terminated her "for cause" based on reasons that were, and are, unsupported by the actual circumstances and pretextual, entitling her to an award of punitive damages.

171. Dr. Hambrick-Brown also seeks reimbursement of attorneys' fees, interest, and costs associated with pursuing this civil action.

172. Dr. Hambrick-Brown also seeks injunctive relief to prevent IRAP from engaging in future race-based retaliation against employees who oppose discrimination or participate in civil rights investigations, including but not limited to implementing policies and procedures to ensure equal treatment of employees regardless of race and prohibiting retaliation against employees who report discrimination.

**<u>SEVENTH CAUSE OF ACTION</u>**
**Discrimination in Violation of the New York City Human Rights Law**
**(N.Y.C. Admin Code §§ 8-101 *et seq.*)**
**(Against Defendant IRAP)**

173. Plaintiff realleges and reincorporates by reference the previous paragraphs 1-89 as if fully set forth herein.

174. The New York City Human Rights Law ("NYCHRL") declares that "there is no greater danger to the health, morals, safety and welfare of the city and its inhabitants than the existence of groups prejudiced against one another and antagonistic to each other because of their actual or perceived differences, including those based on race…" N.Y.C. Admin Code § 8-101.

175. As such, the NYCHRL makes it unlawful, "[f]or an employer or an employee or agent thereof, because of the actual or perceived … race … color, national origin, …: [t]o discriminate against such person in compensation or in terms, conditions or privileges of employment." N.Y.C. Admin Code § 8-107(1)(a)(3).

176. At all times relevant to this action, IRAP was Dr. Hambrick-Brown's employer within the meaning of the NYCHRL, employing more than four (4) individuals.

177. Dr. Hambrick-Brown is a member of a protected class under the NYCHRL as a Black woman.

178. Plaintiff was qualified for her position and for advancement into higher-level Human Resources leadership roles at IRAP, including the Head of People & Culture, Head of HR, Global Human Resources Director, or comparable HR leadership position.

179. Plaintiff had extensive Human Resources, leadership, operations, compliance, and organizational management experience, including significant prior leadership experience and more than two decades of military service.

180. After the departure of IRAP's prior HR executive, Plaintiff assumed substantial additional HR leadership responsibilities, including operational HR leadership functions, departmental budget responsibilities, benefits administration, HRIS implementation work, strategic HR operational support, and other duties consistent with higher-level HR leadership.

181. Despite Plaintiff's qualifications and performance of expanded higher-level duties, Defendant failed and refused to promote Plaintiff, increase her compensation, adjust her title, or provide her with corresponding leadership authority.

182. Plaintiff expressed interest in and sought advancement into IRAP's HR leadership role, including the Head of People & Culture, Head of HR, Global Human Resources Director, or comparable position.

183. Defendant denied Plaintiff that advancement opportunity.

184. Defendant selected or advanced another individual, Ms. Al-Risheq, into an HR leadership position over Plaintiff.

185. Plaintiff was qualified for the promotion and was at least as qualified as, or more qualified than, the individual selected, including with respect to U.S. employment law, HR compliance, governance, leadership, and operational HR responsibilities.

186. Senior leadership, including Defendant Aly, has previously admitted that Black women were treated more harshly than white employees yet failed to act in mitigating the hostile environment.

187. Defendant's failure to promote Plaintiff occurred under circumstances giving rise to an inference of discrimination based on race.

188. Those circumstances include, but are not limited to, Defendant's inconsistent application of its promotion, compensation, and internal hiring policies; Defendant's continued

approval of promotions, title changes, salary adjustments, bonuses, leadership appointments, and interim roles for other white employees while denying Plaintiff advancement; Defendants' failure to follow its normal internal hiring or posting procedures; Defendants' shifting or unsupported explanation that leadership desired a more "global" direction despite Plaintiff's global HR experience; and Defendant's pattern of excluding Plaintiff from HR leadership authority while requiring her to perform higher-level HR work.

189. Defendant treated Plaintiff less favorably than similarly situated employees outside her protected classes and/or otherwise treated Plaintiff less favorably because of her race

190. Defendant's stated reasons for failing to promote Plaintiff were, and are, false, inconsistent, unsupported, and pretextual.

191. Defendant's discriminatory conduct is intentional and creates disparate treatment based on Dr. Hambrick-Brown's race, as evidenced by the differential treatment she received compared to similarly situated white employees.

192. As a direct and proximate result of IRAP's unlawful race discrimination in violation of the NYCHRL, Dr. Hambrick-Brown has suffered and continues to suffer monetary and economic damages, including but not limited to loss of past and future income, compensation, and benefits.

193. As a direct and proximate result of IRAP's unlawful race discrimination, Dr. Hambrick-Brown has suffered and continues to suffer damages for loss of future earning capacity, damage to her professional reputation, and severe mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, sleep issues, and emotional pain and suffering.

194. IRAP explicitly tolerated a culture of racially-charged commentary and harassment and ratified such conduct by awarding promotions and career-advancing opportunities to those engaged in such harassment. As such, IRAP's unlawful discriminatory conduct was willful, wanton, and malicious, and was done with conscious disregard of Dr. Hambrick-Brown's civil rights, entitling her to an award of punitive damages.

195. Dr. Hambrick-Brown also seeks reimbursement of attorneys' fees, interest, and costs associated with pursuing this civil action.

196. Dr. Hambrick-Brown seeks injunctive relief to prevent IRAP from engaging in future race-based discrimination and disparate treatment against minority employees. Such injunctive relief should include, but not be limited to, requiring IRAP to implement and maintain non-discriminatory hiring, promotion, compensation, and termination policies; providing mandatory training on federal civil rights laws and unconscious bias for all supervisory personnel; establishing clear procedures for reporting and investigating discrimination complaints; and ensuring equal treatment of all employees regardless of race in work assignments, advancement opportunities, and workplace accommodations. This injunctive relief is necessary to prevent the continuation of the systematic discriminatory practices that Dr. Hambrick-Brown has endured and to ensure compliance with federal civil rights laws.

**EIGHTH CAUSE OF ACTION**
**Retaliation in Violation of the New York City Human Rights Law**
**(N.Y.C. Admin Code §§ 8-101 *et seq.*)**
**(Against Defendant IRAP)**

197. Plaintiff realleges and reincorporates by reference the previous paragraphs as if fully set forth herein.

198. The New York City Human Rights Law ("NYCHRL") declares that "there is no greater danger to the health, morals, safety and welfare of the city and its inhabitants than the

existence of groups prejudiced against one another and antagonistic to each other because of their actual or perceived differences, including those based on race…" N.Y.C. Admin Code § 8-101.

199. The NYCHRL prohibits retaliation against individuals who oppose race discrimination or assert their rights under the statute. N.Y.C. Admin Code § 8-107(7).

200. Plaintiff engaged in protected activity when she opposed discrimination and inequitable treatment at IRAP, including IRAP's failure to promote her, failure to compensate her for expanded HR leadership duties, exclusion from leadership functions, inconsistent application of promotion and compensation policies, stripping of her job responsibilities and disparate treatment of Black women in HR leadership.

201. Plaintiff also engaged in protected activity when she raised good-faith concerns that IRAP was attempting to retroactively shift blame for benefits-related decisions onto Ms. Tracy Dennis, a Black female HR executive who had been terminated by IRAP. Plaintiff reasonably believed the disputed benefits structure involved consultants, ADP, and executive leadership review or approval, and that Rouba Anka and Heba Al-Risheq later relied on an earlier plan version that Plaintiff believed was not the approved version. Plaintiff disclosed these concerns to senior leadership, including Rebecca Heller and Sharif Aly.

202. Plaintiff further engaged in protected activity when she filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission alleging discrimination, retaliation, disparate treatment, hostile work environment, and discriminatory denial of advancement opportunities. Defendant knew of Plaintiff's protected activity.

203. After Plaintiff engaged in protected activity, Defendant subjected her to materially adverse actions, including questioning her communications with Ms. Dennis, warning employees, including Plaintiff, not to send screenshots or documents because the matter was "legal,"

increasing scrutiny of Plaintiff, isolating her from leadership and HR functions, excluding her from meetings, reducing or reassigning her duties, diminishing her access to systems and information, denying her promotion and compensation, placing another less-qualified individual above her in HR leadership, and initiating or permitting a formal investigation of Plaintiff.

204. Defendant's actions would dissuade a reasonable employee from making or supporting a charge of discrimination, opposing discrimination, disclosing compliance concerns, or participating in protected activity.

205. The timing and circumstances of Defendant's actions support a causal connection between Plaintiff's protected activity and Defendant's retaliation. Defendant's explanations are inconsistent and pretextual, including its reliance on alleged promotion and compensation restrictions while continuing to approve promotions, title changes, leadership appointments, and compensation opportunities for others, and its claim that Plaintiff was not selected for HR leadership because IRAP wanted a more "global" direction despite Plaintiff's global HR experience and performance of senior HR duties.

206. Defendant retaliated against Plaintiff because she opposed discrimination, disclosed concerns regarding the benefits-plan issue involving Ms. Dennis, filed an EEOC Charge of Discrimination, in violation of Title VII and was regarded as a witness supporting Ms. Dennis's EEO dispute against IRAP.

207. As a direct and proximate result of IRAP's unlawful retaliation, Dr. Hambrick-Brown has suffered and continues to suffer monetary and economic damages, including but not limited to loss of past and future income, compensation, and benefits

208. As a direct and proximate result of IRAP's unlawful retaliation, Dr. Hambrick-Brown has suffered and continues to suffer damages for loss of future earning capacity, damage to

her professional reputation, and severe mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, sleep issues, and emotional pain and suffering.

209. IRAP's unlawful retaliatory conduct was willful, wanton, and malicious because it knowingly subjected Dr. Hambrick-Brown to discriminatory and retaliatory treatment despite her repeated complaints, disregarded her protected rights, and ultimately terminated her "for cause" based on reasons that were unsupported by the actual circumstances and pretextual, entitling her to an award of punitive damages.

210. Dr. Hambrick-Brown also seeks reimbursement of attorneys' fees, interest, and costs associated with pursuing this civil action.

211. Dr. Hambrick-Brown also seeks injunctive relief to prevent IRAP from engaging in future race-based retaliation against employees who oppose discrimination or participate in civil rights investigations, including but not limited to implementing policies and procedures to ensure equal treatment of employees regardless of race and prohibiting retaliation against employees who report discrimination.

## NINTH CAUSE OF ACTION
**Aiding and Abetting Discrimination and/or Retaliation in Violation of the New York State Human Rights Law**
**(N.Y. CLS Exec. § 296(6))**
**(Against Individual Defendants)**

211. Plaintiff realleges and reincorporates by reference the previous paragraphs as if fully set forth herein.

212. The NYSHRL makes it unlawful for "any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." N.Y. CLS Exec. § 296(6).

213. At all relevant times, Defendant Sharif Aly served as IRAP's President and exercised managerial and decision-making authority over Plaintiff's employment, including her compensation, treatment, response to complaints, and promotion denials. Mr. Aly is IRAP's President, a decision-maker, and a person with knowledge concerning hiring, compensation, promotion, retention efforts, benefits knowledge, restructuring, complaints raised to him, and Dr. Hambrick-Brown' promotional denial and compensation decisions.

214. At all relevant times, Defendant Rouba Anka served in a senior executive and supervisory capacity over Plaintiff and exercised managerial and decision-making authority over Plaintiff's employment, including retention efforts, response to complaints, internal investigations, benefits-related issues, and promotional denial and compensation decisions. Rouba Anka is a participant and decision-maker regarding Dr. Hambrick-Brown with knowledge concerning the retention raises, benefits and payroll awareness, exclusion decisions, executive communications, and operations reliance.

215. Plaintiff was qualified for her position and for advancement into higher-level Human Resources leadership roles at IRAP, including the Head of People & Culture, Head of HR, Global Human Resources Director, or comparable HR leadership position.

216. Plaintiff had extensive Human Resources, leadership, operations, compliance, and organizational management experience, including significant prior leadership experience and more than two decades of military service.

217. After the departure of IRAP's prior HR executive, Plaintiff assumed substantial additional HR leadership responsibilities, including operational HR leadership functions, departmental budget responsibilities, benefits administration, HRIS implementation work, strategic HR operational support, and other duties consistent with higher-level HR leadership.

218. Despite Plaintiff's qualifications and performance of expanded higher-level duties, Defendants Aly and Anka failed and refused to promote Plaintiff, increase her compensation, adjust her title, or provide her with corresponding leadership authority.

219. Plaintiff expressed interest in and sought advancement into IRAP's HR leadership role, including the Head of People & Culture, Head of HR, Global Human Resources Director, or comparable position.

220. Defendants Aly and Anka denied Plaintiff that advancement opportunity.

221. Defendants Aly and Anka selected or advanced another individual, Ms. Al-Risheq, into an HR leadership position over Plaintiff.

222. Plaintiff was qualified for the promotion and was at least as qualified as, or more qualified than, the individual selected, including with respect to U.S. employment law, HR compliance, governance, leadership, and operational HR responsibilities.

223. Senior leadership, including Defendant Aly, has previously admitted that Black women were treated more harshly than white employees yet failed to act in mitigating the hostile environment.

224. Defendants Aly and Anka's failure to promote Plaintiff occurred under circumstances giving rise to an inference of discrimination based on race.

225. Those circumstances include, but are not limited to, Defendants Aly and Anka's inconsistent application of its promotion, compensation, and internal hiring policies; Defendants' continued approval of promotions, title changes, salary adjustments, bonuses, leadership appointments, and interim roles for other white employees while denying Plaintiff advancement; Defendants' failure to follow its normal internal hiring or posting procedures; Defendants' shifting or unsupported explanation that leadership desired a more "global" direction despite Plaintiff's

global HR experience; and Defendants' pattern of excluding Plaintiff from HR leadership authority while requiring her to perform higher-level HR work.

226. Defendants Aly and Anka treated Plaintiff less favorably than similarly situated employees outside her protected classes and/or otherwise treated Plaintiff less favorably because of her race

227. Defendants Aly and Anka's stated reasons for failing to promote Plaintiff were, and are, false, inconsistent, unsupported, and pretextual.

228. Defendants Aly and Anka's discriminatory conduct is intentional and creates disparate treatment based on Dr. Hambrick-Brown's race, as evidenced by the differential treatment she received compared to similarly situated white employees.

229. Rather than intervene, investigate, or take reasonable corrective action, Mr. Aly and Ms. Anka permitted the discriminatory treatment to continue, failed to meaningfully address Plaintiff's complaints, and participated in decisions that marginalized Plaintiff from functions within her own HR role.

230. Mr. Aly and Ms. Anka further aided and abetted IRAP's discriminatory treatment by participating in promotion denials and pay denials after she raised race-based concerns.

231. Mr. Aly and Ms. Anka knowingly provided substantial assistance, encouragement, and participation in IRAP's discriminatory and/or retaliatory conduct by failing to act on Plaintiff's race-based complaints despite their authority to do so, allowing racially disparate treatment and marginalization to continue, participating in the exclusion of Plaintiff from core HR functions, and jointly carrying out promotion and pay denial decisions.

232. Mr. Aly and Ms. Anka's conduct aided, abetted, incited, compelled, and/or coerced discriminatory practices against Plaintiff because of her race, including but not limited to disparate treatment, unequal institutional support, marginalization, selective enforcement, and termination.

233. Plaintiff engaged in protected activity when she opposed discrimination and inequitable treatment at IRAP, including IRAP's failure to promote her, failure to compensate her for expanded HR leadership duties, exclusion from leadership functions, inconsistent application of promotion and compensation policies, stripping of her job responsibilities and disparate treatment of Black women in HR leadership.

234. Plaintiff also engaged in protected activity when she raised good-faith concerns that IRAP was attempting to retroactively shift blame for benefits-related decisions onto Ms. Tracy Dennis, a Black female HR executive who had been terminated by IRAP. Plaintiff reasonably believed the disputed benefits structure involved consultants, ADP, and executive leadership review or approval, and that Rouba Anka and Heba Al-Risheq later relied on an earlier plan version that Plaintiff believed was not the approved version. Plaintiff disclosed these concerns to senior leadership, including Rebecca Heller and Sharif Aly.

235. Plaintiff further engaged in protected activity when she filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission alleging discrimination, retaliation, disparate treatment, hostile work environment, and discriminatory denial of advancement opportunities. Defendant knew of Plaintiff's protected activity.

236. After Plaintiff engaged in protected activity, Defendants Aly and Anka subjected her to materially adverse actions, including questioning her communications with Ms. Dennis, warning employees, including Plaintiff, not to send screenshots or documents because the matter was "legal," increasing scrutiny of Plaintiff, isolating her from leadership and HR functions,

excluding her from meetings, reducing or reassigning her duties, diminishing her access to systems and information, denying her promotion and compensation, placing another less-qualified individual above her in HR leadership, and initiating or permitting a formal investigation of Plaintiff.

237. Defendants Aly and Anka's actions would dissuade a reasonable employee from making or supporting a charge of discrimination, opposing discrimination, disclosing compliance concerns, or participating in protected activity.

238. The timing and circumstances of Defendants Aly and Anka's actions support a causal connection between Plaintiff's protected activity and Defendants Aly and Anka's retaliation. Defendants' explanations are inconsistent and pretextual, including its reliance on alleged promotion and compensation restrictions while continuing to approve promotions, title changes, leadership appointments, and compensation opportunities for others, and its claim that Plaintiff was not selected for HR leadership because IRAP wanted a more "global" direction despite Plaintiff's global HR experience and performance of senior HR duties.

239. Defendant retaliated against Plaintiff because she opposed discrimination, disclosed concerns regarding the benefits-plan issue involving Ms. Dennis, filed an EEOC Charge of Discrimination, in violation of Title VII and was regarded as a witness supporting Ms. Dennis's EEO dispute against IRAP.

240. As a direct and proximate result of Mr. Aly and Ms. Anka's aiding and abetting of unlawful race discrimination in violation of the NYSHRL, Dr. Hambrick-Brown has suffered and continues to suffer monetary and economic damages, including but not limited to loss of past and future income, compensation, and benefits.

241. As a direct and proximate result of Mr. Aly and Ms. Anka's aiding and abetting of unlawful race discrimination, Dr. Hambrick-Brown has suffered and continues to suffer damages for loss of future earning capacity, damage to her professional reputation, and severe mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, sleep issues, and emotional pain and suffering.

242. Defendants Mr. Aly and Ms. Anka acted with reckless indifference to Plaintiff's protected rights. They knew Plaintiff had raised race-based concerns about disparate treatment, microaggressions, public disrespect, exclusion, and hostile treatment as a Black woman in leadership, yet failed to investigate or take corrective action. Instead, they allowed the conduct to continue. Those facts support punitive damages against them, jointly or severally, because Mr. Aly and Ms. Anka knowingly used their authority to assist and ratify discriminatory conduct despite clear notice that Plaintiff was asserting race-based workplace concern. Their conduct was willful, wanton, and malicious, and was done with conscious disregard of Dr. Hambrick-Brown's civil rights, entitled her to an award of punitive damages.

243. Dr. Hambrick-Brown also seeks reimbursement of attorneys' fees, interest, and costs associated with pursuing this civil action.

**TENTH CAUSE OF ACTION**
**Aiding and Abetting Discrimination and/or Retaliation in Violation of the New York City Human Rights Law**
**(N.Y.C. Admin. Code § 8-107(6))**
**(Against Individual Defendants)**

244. Plaintiff realleges and reincorporates by reference the previous paragraphs as if fully set forth herein.

245. The NYCHRL makes it unlawful for "any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so." N.Y.C. Admin. Code § 8-107(6).

246. At all relevant times, Defendant Sharif Aly served as IRAP's President and exercised managerial and decision-making authority over Plaintiff's employment, including her compensation, treatment, response to complaints, and promotion denials. Mr. Aly is IRAP's President, a decision-maker, and a person with knowledge concerning hiring, compensation, promotion, retention efforts, benefits knowledge, restructuring, complaints raised to him, and Dr. Hambrick-Brown' promotional denial and compensation decisions.

247. At all relevant times, Defendant Rouba Anka served in a senior executive and supervisory capacity over Plaintiff and exercised managerial and decision-making authority over Plaintiff's employment, including retention efforts, response to complaints, internal investigations, benefits-related issues, and promotional denial and compensation decisions. Rouba Anka is a participant and decision-maker regarding Dr. Hambrick-Brown with knowledge concerning the retention raises, benefits and payroll awareness, exclusion decisions, executive communications, and operations reliance.

248. Plaintiff was qualified for her position and for advancement into higher-level Human Resources leadership roles at IRAP, including the Head of People & Culture, Head of HR, Global Human Resources Director, or comparable HR leadership position.

249. Plaintiff had extensive Human Resources, leadership, operations, compliance, and organizational management experience, including significant prior leadership experience and more than two decades of military service.

250. After the departure of IRAP's prior HR executive, Plaintiff assumed substantial additional HR leadership responsibilities, including operational HR leadership functions, departmental budget responsibilities, benefits administration, HRIS implementation work, strategic HR operational support, and other duties consistent with higher-level HR leadership.

251. Despite Plaintiff's qualifications and performance of expanded higher-level duties, Defendants Aly and Anka failed and refused to promote Plaintiff, increase her compensation, adjust her title, or provide her with corresponding leadership authority.

252. Plaintiff expressed interest in and sought advancement into IRAP's HR leadership role, including the Head of People & Culture, Head of HR, Global Human Resources Director, or comparable position.

253. Defendants Aly and Anka denied Plaintiff that advancement opportunity.

254. Defendants Aly and Anka selected or advanced another individual, Ms. Al-Risheq, into an HR leadership position over Plaintiff.

255. Plaintiff was qualified for the promotion and was at least as qualified as, or more qualified than, the individual selected, including with respect to U.S. employment law, HR compliance, governance, leadership, and operational HR responsibilities.

256. Senior leadership, including Defendant Aly, has previously admitted that Black women were treated more harshly than white employees yet failed to act in mitigating the hostile environment.

257. Defendants Aly and Anka's failure to promote Plaintiff occurred under circumstances giving rise to an inference of discrimination based on race.

258. Those circumstances include, but are not limited to, Defendants Aly and Anka's inconsistent application of its promotion, compensation, and internal hiring policies; Defendants' continued approval of promotions, title changes, salary adjustments, bonuses, leadership appointments, and interim roles for other white employees while denying Plaintiff advancement; Defendants' failure to follow its normal internal hiring or posting procedures; Defendants' shifting or unsupported explanation that leadership desired a more "global" direction despite Plaintiff's

global HR experience; and Defendants' pattern of excluding Plaintiff from HR leadership authority while requiring her to perform higher-level HR work.

259. Defendants Aly and Anka treated Plaintiff less favorably than similarly situated employees outside her protected classes and/or otherwise treated Plaintiff less favorably because of her race

260. Defendants Aly and Anka's stated reasons for failing to promote Plaintiff were, and are, false, inconsistent, unsupported, and pretextual.

261. Defendants Aly and Anka's discriminatory conduct is intentional and creates disparate treatment based on Dr. Hambrick-Brown's race, as evidenced by the differential treatment she received compared to similarly situated white employees.

262. Rather than intervene, investigate, or take reasonable corrective action, Mr. Aly and Ms. Anka permitted the discriminatory treatment to continue, failed to meaningfully address Plaintiff's complaints, and participated in decisions that marginalized Plaintiff from functions within her own HR role.

263. Mr. Aly and Ms. Anka further aided and abetted IRAP's discriminatory treatment by participating in promotion denials and pay denials after she raised race-based concerns.

264. Mr. Aly and Ms. Anka knowingly provided substantial assistance, encouragement, and participation in IRAP's discriminatory and/or retaliatory conduct by failing to act on Plaintiff's race-based complaints despite their authority to do so, allowing racially disparate treatment and marginalization to continue, participating in the exclusion of Plaintiff from core HR functions, and jointly carrying out promotion and pay denial decisions.

265. Mr. Aly and Ms. Anka's conduct aided, abetted, incited, compelled, and/or coerced discriminatory practices against Plaintiff because of her race, including but not limited to disparate treatment, unequal institutional support, marginalization, selective enforcement, and termination.

266. Plaintiff engaged in protected activity when she opposed discrimination and inequitable treatment at IRAP, including IRAP's failure to promote her, failure to compensate her for expanded HR leadership duties, exclusion from leadership functions, inconsistent application of promotion and compensation policies, stripping of her job responsibilities and disparate treatment of Black women in HR leadership.

267. Plaintiff also engaged in protected activity when she raised good-faith concerns that IRAP was attempting to retroactively shift blame for benefits-related decisions onto Ms. Tracy Dennis, a Black female HR executive who had been terminated by IRAP. Plaintiff reasonably believed the disputed benefits structure involved consultants, ADP, and executive leadership review or approval, and that Rouba Anka and Heba Al-Risheq later relied on an earlier plan version that Plaintiff believed was not the approved version. Plaintiff disclosed these concerns to senior leadership, including Rebecca Heller and Sharif Aly.

268. Plaintiff further engaged in protected activity when she filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission alleging discrimination, retaliation, disparate treatment, hostile work environment, and discriminatory denial of advancement opportunities. Defendant knew of Plaintiff's protected activity.

269. After Plaintiff engaged in protected activity, Defendants Aly and Anka subjected her to materially adverse actions, including questioning her communications with Ms. Dennis, warning employees, including Plaintiff, not to send screenshots or documents because the matter was "legal," increasing scrutiny of Plaintiff, isolating her from leadership and HR functions,

excluding her from meetings, reducing or reassigning her duties, diminishing her access to systems and information, denying her promotion and compensation, placing another less-qualified individual above her in HR leadership, and initiating or permitting a formal investigation of Plaintiff.

270. Defendants Aly and Anka's actions would dissuade a reasonable employee from making or supporting a charge of discrimination, opposing discrimination, disclosing compliance concerns, or participating in protected activity.

271. The timing and circumstances of Defendants Aly and Anka's actions support a causal connection between Plaintiff's protected activity and Defendants Aly and Anka's retaliation. Defendants' explanations are inconsistent and pretextual, including its reliance on alleged promotion and compensation restrictions while continuing to approve promotions, title changes, leadership appointments, and compensation opportunities for others, and its claim that Plaintiff was not selected for HR leadership because IRAP wanted a more "global" direction despite Plaintiff's global HR experience and performance of senior HR duties.

272. Defendant retaliated against Plaintiff because she opposed discrimination, disclosed concerns regarding the benefits-plan issue involving Ms. Dennis, filed an EEOC Charge of Discrimination, in violation of Title VII and was regarded as a witness supporting Ms. Dennis's EEO dispute against IRAP.

273. As a direct and proximate result of Mr. Aly and Ms. Anka's aiding and abetting of unlawful race discrimination in violation of the NYCHRL, Dr. Hambrick-Brown has suffered and continues to suffer monetary and economic damages, including but not limited to loss of past and future income, compensation, and benefits.

274. As a direct and proximate result of Mr. Aly and Ms. Anka's aiding and abetting of unlawful race discrimination, Dr. Hambrick-Brown has suffered and continues to suffer damages for loss of future earning capacity, damage to her professional reputation, and severe mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, sleep issues, and emotional pain and suffering.

275. Defendants Mr. Aly and/or Ms. Anka acted with reckless indifference to Plaintiff's protected rights. They knew Plaintiff had raised race-based concerns about disparate treatment, microaggressions, public disrespect, exclusion, and hostile treatment as a Black woman in leadership, yet failed to investigate or take corrective action. Instead, they allowed the conduct to continue. Those facts support punitive damages against them, jointly or severally, because Mr. Aly and Ms. Anka knowingly used their authority to assist and ratify discriminatory conduct despite clear notice that Plaintiff was asserting race-based workplace concern. Their conduct was willful, wanton, and malicious, and was done with conscious disregard of Dr. Hambrick-Brown's civil rights, entitling her to an award of punitive damages.

276. Dr. Hambrick-Brown also seeks reimbursement of attorneys' fees, interest, and costs associated with pursuing this civil action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant and award the following relief:

A. Declare Defendant IRAP's conduct of committing race discrimination against Plaintiff to be in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*;

B. Declare Defendant IRAP's conduct of committing retaliation against Plaintiff to be in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*.;

C. Declare all Defendants' conduct of committing race discrimination against Plaintiff to be in violation of 42 U.S.C. § 1981;

D. Declare all Defendants' conduct of committing retaliation against Plaintiff to be in violation of 42 U.S.C. § 1981;

E. Declare Defendant IRAP's conduct of committing race discrimination against Plaintiff to be in violation of the New York State Human Rights Law;

F. Declare Defendant IRAP's conduct of committing retaliation against Plaintiff to be in violation of the New York State Human Rights Law;

G. Declare Defendant IRAP's conduct of committing race discrimination against Plaintiff to be in violation of the New York City Human Rights Law;

H. Declare Defendant IRAP's conduct of committing retaliation against Plaintiff to be in violation of the New York City Human Rights Law;

I. Declare Defendants Sharif Aly and/or Rouba Anka's conduct of aiding and abetting race discrimination to be violation of the New York State Human Rights Law;

J. Declare Defendants Sharif Aly and/or Rouba Anka's conduct of aiding and abetting race discrimination to be violation of the New York City Human Rights Law;

K. Enjoin Defendants to comply with the aforementioned federal and state laws and to cease and desist from engaging in discriminatory and retaliatory conduct;

L. Award to Plaintiff her economic damages against all Defendants, jointly and severally, including but not limited to back pay, front pay, lost wages, lost benefits, lost retirement contributions, and other pecuniary losses in amounts to be proven at trial;

M. Award to Plaintiff against all Defendants, jointly and severally, compensatory damages for emotional distress, mental anguish, pain and suffering, humiliation, embarrassment, damage to her professional reputation, PTSD, and other non-economic harm in amounts to be proven at trial;

N. Declare Defendants' participation in, aiding and abetting of, and ratification of the discriminatory and/or retaliatory conduct to be malicious, willful, wanton, reckless, and/or deliberately indifferent to Plaintiff's civil rights.

O. Award to Plaintiff punitive damages against all Defendants, including Sharif Aly and Rouba Anka in their individual capacities, jointly and/or severally, in amounts to be determined at trial to the extent permitted by law;

P. Award to Plaintiff her reasonable attorneys' fees and costs incurred in this action pursuant to Title VII, 42 U.S.C. § 1981, the NYSHRL, and the NYCHRL;

Q. Award pre- and post-judgment interest on all monetary sums requested above.

R. Order Defendants to implement and maintain policies and procedures to prevent discrimination, harassment, and retaliation in the workplace, including appropriate training for Defendants Aly and Anka, supervisors and managers; and

S. Grant such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff requests a trial by jury on all claims and issues of fact set forth in this Complaint.

Dated: September 28, 2026

Respectfully submitted,

ERIC SIEGEL LAW, PLLC

/s/ *Eric L. Siegel*
Eric L. Siegel (NY Bar No. 2344935)
888 17th Street, N.W., Suite 1200
Washington, D.C. 20006
Phone: (771) 220-6116
Email: esiegel@ericsiegellaw.com

*Attorneys for Plaintiff*